WILLIAM F. MOONEY, and another, *v.* JAMES CAGE.

Where experts, appointed by the Court, are not shown to have been sworn, and their report does not appear to have been homologated, it may be contradicted by other evidence.

A prayer, by the appellee for an amendment of the judgment, filed the day before the case was called for argument, and after a joinder in error, is too late. C. P. 890.

APPEAL from the District Court of Terrebonne, *Nicholls.* J.

*J. C. Beatty*, for the plaintiff.

*Connely*, for the appellant.

GARLAND, J. This action is to recover the sum of $2468 85, with legal interest, for making a quantity of bricks on the defendant's plantation, and laying them in the erection of the walls of a sugar house, and other buildings. The petitioners allege, that they made and burned 718,520 bricks; and that they used in erecting the walls of the sugar house, and overseer's house, 721,680, besides some used in the erection of a chimney, and for other purposes. For making the bricks, they claimed one dollar per thousand; and for laying them, one dollar and seventy-five cents per thousand. Compensation is also claimed for extra work on different buildings. It is said, that a written contract was entered into, which the defendant has in his possession, and refuses to deliver, or give a copy of. An account is, therefore, filed, and the value of the labor and services claimed.

The answer, after a general denial, avers, that the defendant employed the plaintiffs to do all the brick work on the sugar house, except the *setting* of the kettles; but that they abandoned the work and refused to complete it, in consequence of which, the defendant was obliged to employ one John M. Brooks to finish it, whereby, from the increased price he was obliged to give, and the delay, damage to the amount of $1000 had accrued, which he claims. It is further denied, that the plaintiff ever performed the quantity of work charged, or that there was any amicable demand for settlement or payment. The defendant alleges, further, that the written contract is lost or mislaid, and that the prices charged exceed those mentioned in it. He avers, that the measurement made was *ex parte*; and he prays the court to appoint experts to measure it. He further avers, that payments to the amount of $957 23 were made, and that an agreement was entered into to defer the payment of any other sum for one year, from the date of the last receipt; which period not having elapsed, the suit was declared to be premature, and its dismissal asked for.

On the application of the defendant, two experts were appointed to measure the work done by the plaintiffs, one selected by each party.

In a supplemental answer, the defendant interrogated the

plaintiff as to certain payments made by him, and whether they had not agreed as to the number of bricks in a certain kiln. The plaintiffs answered, that there was no such agreement, and admitted the payment of various sums, for which the defendant has credit.

On the trial, the written contract was produced by the defendant, who alleged that he had found it a few days before. It provides that the plaintiffs are to make as many bricks as the defendant shall require, to construct the sugar house and other buildings, and also, " to lay the bricks, and make the sugar house and other buildings, on such plan" as the defendant may direct. After various clauses, it provides how the openings, (the doors and windows,) are to be calculated in making the measurement, and recites, that it is alleged by the plaintiff to be usual to charge an extra price for chimneys, and a ratio is fixed, by which the extra price is to calculated, if the custom be shown. The *setting* of the sugar kettles is specially excluded from the contract. The prices for making and laying the bricks, are those mentioned in the petition. It is also agreed, that the payment of the money is not to be deferred longer than the 1st of April, 1843; and the amount is to bear interest at eight per cent, from the 1st of January in that year, if not previously paid.

The experts appointed by the court, reported their measurement and calculation of the number of bricks in the sugar house, and overseer's house, at 698,463. Pelton, one of the experts, who is a planter, says, that the report shows their mode of proceeding ; that they measured all the work shown them by Hillman, and that, including the foundation of a bell house, the whole number of bricks is 725,721, the work done by Brooks not included. The testimony of Grinage, the other expert, accords with that of Pelton. In explanation they say, that they calculated sixteen bricks to the cubic foot, relying upon the correctness of Nicholson's tables. Neither of the experts were brick-masons or mechanics; but had seen a great deal of brick work, and had had it done for themselves. The plaintiffs offered the testimony of a brick-mason, who had followed the business since the year 1806. He says that he accurately measured the work, and made the calculations ; and that he furnished the statement upon which the

claim of plaintiff is based.   He states, that he measured ac-
curately, with a line ; while it appears from the evidence of the
experts, that they used a pole, supposed to be ten feet in length,
but which was afterwards found not to be exactly accurate.   The
testimony of the witness who says, that he accurately measured
the work is sustained, in various particulars, by another workman
who was employed to work on the building.   The testimony of
other witnesses was given, to prove the manner in which the
work was executed, the payments made by the defendant, and
other circumstances connected with the case, which it is not neces-
sary now to detail.   The cause was submitted to a jury; and, after
hearing all the facts, a verdict for $1213 was given for the
plaintiff, upon which judgment was rendered, after the refusal of
a new trial.   The defendant has appealed.   During the trial,
the plaintiffs offered, as a witness, the workman who had measured
the work, for the purpose of proving the correctness of their ac-
count.   The defendant's counsel objected to his testimony, on the
ground, that as experts had been appointed by the court to mea-
sure and report on the work, their report was final and con-
clusive on the plaintiffs, and that the plaintiffs could not make their
*ex parte* acts evidence on their behalf.   The court overruled the
objections, and admitted the testimony.   We do not think the
Judge erred.   Article 441, and the following one, of the Code of
Practice, designate the cases in which experts, auditors, &c., may
be appointed; and define their duties and powers, and the objects
of such appointments, the principal of which is, to get facts and
information in such a shape as will best inform the court of the
true state of the case.   Article 433 directs the return of the re-
port to the Clerk, in order that either party may have it homolo-
gated; and article 456 shows the steps necessary to effect that
object.   The experts in this case do not appear to have been
sworn before proceeding to discharge their duty ; nor were
any steps taken to homologate their report.   It was, therefore,
nothing more than the statement of the witnesses, and might be
contradicted.   The evidence of Ament was properly admitted.

The second bill of exceptions was taken to permitting the plain-
tiffs to use the deposition of Wm. Winchester, as evidence.   The
objection was, that certain interrogatories, propounded by the de-

fendant, had not been sent with the commission, and that no answer had been obtained to them. It appears that the plaintiffs made out their interrogatories, and had a copy of them served on the defendant. Some days after, the defendant filed, in the Clerk's office, a number of interrogatories in the same case, but did not specify, on the face of the paper, nor in any other manner, that they were intended as cross-interrogatories to those filed by the plaintiffs; the Clerk, therefore, supposed that the defendant intended to take out a separate commission, and did not forward his interrogatories with those of the plaintiffs, when the commission to take Winchester's testimony was sent. Subsequently, in consequence of the continuance of the cause, defendant sent a commission to take Winchester's evidence, propounding, in substance, the same questions as those filed with the Clerk. This deposition was used on the trial, and the defendant had the benefit of the answers of Winchester, in as ample a manner as though his questions had been forwarded in the first instance. No injury resulted from the omission to send the questions in the first instance, and its not having been done, is, in a great measure, imputable to the loose mode in which the business was conducted by the defendant, or his counsel. Under these circumstances, we think the deposition was properly admitted in evidence.

We have looked into the merits of the case, and carefully examined the testimony, to see if any material error has been committed, to the prejudice of the defendant; and find no sufficient reason either to reverse the judgment, or to reduce the amount. We think that the jury have come very near what is right, and have dealt fairly with the parties.

The plaintiff has asked us to amend the judgment, so as to allow him legal interest from judicial demand. This we cannot do. It was not found by the jury, nor allowed in the inferior court; nor was the application to amend filed in proper time in this court, having been presented only the day before the cause was called for argument, and after a joinder in error. Code of Practice, art. 890.

*Judgment affirmed.*